UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
EVA MALLEK,

               *Plaintiff*,

      v.

ALLSTATE INDEMNITY CO. and
KEVIN SCHAEFER,

              *Defendants*.
----------------------------------X

**MEMORANDUM AND ORDER**

17-CV-5949(KAM)(SJB)

**KIYO A. MATSUMOTO, United States District Judge:**

        In this action, the plaintiff, Eva Mallek ("Plaintiff"), alleges that the defendants, Allstate Indemnity Company ("Allstate") and insurance agent Kevin Schaefer ("Mr. Schaefer," and together with Allstate, "Defendants"), breached an insurance contract by failing to pay out her claim following a house fire that occurred in 2015 at a home that she owned. Plaintiff and Defendants have both moved for summary judgment. For the reasons herein, Plaintiff's motion for summary judgment is DENIED, and Defendants' motion is GRANTED IN PART. Plaintiff has also filed a motion for recusal, which is DENIED.

        This case will proceed to trial on Plaintiff's breach of contract claim in order to resolve the single disputed factual question described below.

## Background

Plaintiff initiated this action in Queens County Supreme Court, and on October 11, 2017, Allstate filed a notice of removal in this court. (ECF No. 1, Notice of Removal.) Plaintiff's complaint alleged that Allstate "declin[ed] to honor [P]laintiff's homeowner's insurance policy . . . after a fire destroyed the structure and contents of her home . . . on or about September 14, 2015" in Queens Village, New York. (ECF No. 1-2, Complaint ("Compl."), ¶ 1.)

The house in question was located at 88-20 207 Street in Queens Village (the "Queens Village property" or the "insured property"). (*Id.*) The Queens Village property was purchased by Plaintiff's parents in 1977, and Plaintiff has been the sole-deeded owner of the house since 2002, following the death of her mother. (ECF No. 92-3, Defendants' Rule 56.1 Statement ("Def. 56.1"), ¶ 1.) Plaintiff lived part of the time at the Queens Village property with her father (Plaintiff also owned another house in Forest Hills, New York with her husband), until 2005, when her father got re-married. (*Id.* ¶ 4.) After her father was re-married, Plaintiff resided full-time at her house in Forest Hills with her husband, and did not reside at the Queens Village property with her father at all. (*Id.; see* ECF No. 89-6, Def. Ex. E, Plaintiff's March 25, 2019 Deposition Transcript ("Mar. 25, 2019 Dep. Tr."), at 23:14-22; ECF No. 89-4, Def. Ex.

C, Plaintiff's January 5, 2019 Deposition Transcript ("Jan. 5, 2019 Dep. Tr."), at 58:14-24, 59:11-18.)  Plaintiff testified that she did not inform Allstate, from whom she had purchased a homeowner's insurance policy to cover the Queens Village property, that she was no longer spending any time living at that property.  (Jan. 5, 2019 Dep. Tr. at 60:24-61:11.)

The relevant insurance policy covered the time period from March 20, 2015 to March 20, 2016.  (Def. 56.1 ¶ 10; *see* ECF No. 89-5, Def. Ex. D, Standard Homeowners Policy Declarations.) The policy provided for a $358,000 limit of liability, and coverage for additional living expenses for up to twelve months. (Def. 56.1 ¶¶ 13-14.)  The version of the policy proffered by Defendants states that the policy covered her "dwelling," and "dwelling" was defined as "the insured property on the Policy Declarations, where you reside and which is principally used as a private residence."  (*Id.* ¶ 15.)

On September 15, 2015, Plaintiff reported to Allstate a fire at the insured property that occurred the previous day. (ECF No. 92, Def. Ex. A, Denial.)  On June 13, 2016, Allstate denied her claim for several reasons, including that she "did not reside, intend to reside, or otherwise maintain a physical presence at the insured premises at the time of the fire as required by the Policy terms as set forth in the contract for insurance."  (*Id.*)  Further, Allstate's denial stated that

Plaintiff "did not advise Allstate of changes in [her] use and/or occupancy of the insured premises as required by the Policy terms as set forth in the contract of insurance." (*Id.*)

After Plaintiff sued Defendants in state court and Defendants removed the action to this court, Plaintiff filed a motion to remand the case to state court. (ECF No. 9, Motion to Remand.)  The motion was referred to Magistrate Judge Sanket Bulsara, who issued a Report and Recommendation that the motion be denied. (ECF No. 26, Report and Recommendation ("R&R").) Plaintiff objected to the recommendation, and filed a motion to amend her complaint. (ECF No. 27, Motion to Amend.)  This court issued an Order on July 31, 2018, adopting Judge Bulsara's R&R in its entirety, and denying Plaintiff's motion to amend. (ECF No. 36, Order Adopting Report and Recommendation.)

Since that time, the parties have engaged in mediation, various discovery disputes, and Plaintiff has also filed numerous motions, including for sanctions, which have been denied, and she also filed a pending motion for recusal.  Both parties have moved for summary judgment. (*See* ECF Nos. 88-94.)

## Legal Standard

A party moving for summary judgment must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The moving party bears the burden of

establishing the absence of a genuine issue of material fact." *Hartford Life Ins. Co. v. Einhorn ex rel. Estate of Mehring*, 452 F. Supp. 2d 126, 129 (E.D.N.Y. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).  Once the moving party makes such a showing, the opposing party must establish that there is an issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).  "[U]nsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

Where, as here, "a *pro se* litigant is involved, 'the same standards for summary judgment apply, but the *pro se* litigant should be given special latitude in responding to a summary judgment motion.'" *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015) (quoting *Knowles v. N.Y. City Dep't of Corr.*, 904 F.Supp. 217, 220 (S.D.N.Y.1995)).

## Discussion

### I.   The Terms of the Insurance Policy

Plaintiff's primary claim is for breach of the insurance contract, though she makes several other claims related to Allstate's alleged conduct towards her, which the

court will discuss separately.  Plaintiff's breach of contract claim seeks "full relief for the loss of the structure of her home," reimbursement for "overpaid sums" she paid to Allstate, and damages for pain and suffering.  (Compl. ¶¶ 28-35.)

To succeed on a breach of contract claim, Defendants' breach of the contract is an essential element of Plaintiff's claim.  *See, e.g.*, *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188 (S.D.N.Y. 2011) (under New York law, "breach of contract by the defendant" is one of four elements of a breach claim).  The insurance contract proffered by Allstate was unambiguous, and "[u]nder New York law, 'unambiguous provisions of an insurance contract must be given their plain and ordinary meaning[.]'"  *Covic v. Allstate Indem. Co.*, No. 16-cv-50, 2017 WL 5054743, at *4 (N.D.N.Y. Sept. 25, 2017) (quoting *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (N.Y. 2007)); *see also Cragg v. Allstate Indem. Corp.*, 17 N.Y.3d 118, 122 (N.Y. 2011) ("Insurance contracts must be interpreted according to common speech and consistent with the reasonable expectations of the average insured[.]").  Thus, because Defendants did not breach the unambiguous terms of the contract, Plaintiff's claim fails, as long as she agreed to those terms (an issue the court will address momentarily).

The contract at issue here provided coverage for Plaintiff's "dwelling" as follows:

> **Property We Cover Under Coverage A**:
>
> 1. **Your dwelling** including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.

(ECF No. 89-5, Def. Ex. D at -572 (bold in original).)

The policy defined "your" as "the person named on the Policy Declarations as the Insured," which, here, was only Plaintiff,[1] "and that person's resident spouse." (*Id.* at -569.) It defined "dwelling" as "a one, two, three or four family building, identified as the insured property on the Policy Declarations, where **you** reside and which is principally used as a private residence." (*Id.* at -571 (bold in original).) Lastly, the policy required that the insured "inform [Allstate] of any change in title, use or occupancy of the" dwelling, in "return" for Allstate "agree[ing] to provide the coverages indicated on the Policy Declarations." (*Id.* at -571.)

The undisputed factual record is clear that Plaintiff did not reside at the insured property after 2005. Plaintiff admitted this fact multiple times during her depositions. (Mar. 25, 2019 Dep. Tr. at 23:14-22; Jan. 5, 2019 Dep. Tr. at 58:14-

---

[1] Plaintiff's name is listed as the only insured, and her address is listed as the Forest Hills house where she resided with her husband. (ECF No. 89-5, Def. Ex. D at -549.)

24, 59:11-18.)  Plaintiff also acknowledged at one of her
depositions that she did not inform Allstate about the change in
the occupancy status of the insured property (*id.* at 60:24-
61:11), which was required by the insurance policy.

Courts have consistently held that, where a
homeowner's insurance policy requires the insured to reside at
the covered property, but the insured does not reside there, the
insurance company's refusal to provide coverage is not a breach
of the contract.  *See Covic*, 2017 WL 5054743, at *5 (collecting
cases); *Vela v. Tower Ins. Co.*, 83 A.D.3d 1050, 1051 (2d Dep't
2011) (insurance company "demonstrated its *prima facie*
entitlement to judgment as a matter of law by submitting, among
other things, the policy and its declaration page indicating
that the 'residence premises' were the premises at issue herein,
along with the plaintiff's policy application in which she
asserted that the premises were owner-occupied, and her
deposition testimony that the premises had been unoccupied since
the closing and that, when the [] damage occurred, she, her
husband, and their children were living at another property in
Queens County, which was owned by her husband").

Plaintiff argues in her motion that in 2007, she
"approached her Allstate agent in person to report the change in
the property's title."  (ECF No. 88, Plaintiff's Motion for
Summary Judgment ("Pl. Mot."), at 2.)  Plaintiff has proffered a

letter she received from Allstate, summarizing changes to her policy that took effect on March 20, 2007. (Pl. Ex. 5.) One of the changes listed on the letter was: "An Occupant has been changed." (*Id.*) In contrast to her statement at her deposition that she did not inform Allstate that she no longer resided at the Queens Village property, Plaintiff now avers that this 2007 letter reflects that she did. (*See* ECF No. 91, Plaintiff's Reply to Defendants' Opposition to Summary Judgement ("Pl. Reply"), at 2.) Allstate counters that the occupancy change referenced in the letter actually refers to Plaintiff's father being removed as an occupant. (*See* ECF No. 94, Defendants' Reply ("Def. Reply"), at 5-6.)

Despite Plaintiff's assertion that this 2007 letter (Pl. Ex. 5) presents a factual dispute, the court notes that Plaintiff testified that, in fact, she never told Allstate after 2005 that she was spending "zero percent" of her time at the Queens Village property. (Jan. 5, 2019 Dep. Tr. at 60:24-61:11.) Even assuming that there is a factual dispute about what the 2007 letter from Allstate meant, that dispute would not be material to the outcome of Plaintiff's claim for breach of contract. If it were true that Plaintiff informed Allstate that she no longer resided at the house in 2007, the relevant question would still be whether Allstate breached the insurance policy that was in place in 2015. Whether or not Plaintiff

could prove that she told Allstate she was no longer residing at the house in 2007, the 2015 insurance policy nonetheless unambiguously provided coverage only if the insured, Plaintiff, resided at the insured property, regardless of what representations Plaintiff may have made to Allstate eight years earlier.  Plaintiff admitted that she did not reside at the insured property during the time the policy was in place.  The unambiguous language of the insurance policy would thus be dispositive of Plaintiff's claim, if she agreed to be bound by that policy.

Plaintiff also argues that the insurance policy, and other correspondence from Allstate (including the 2007 letter), listed Plaintiff's address as being the house she shared with her husband in Forest Hills, purportedly showing "that Allstate had at all times been aware that the Plaintiff did not reside in [the] Queens Village [property]." (Pl. Mot. at 3.)  All that shows, however, is that Allstate understood that Plaintiff used a mailing address at the Forest Hills house.  It does not create a dispute of fact as to whether Plaintiff resided at the insured property, as required by the insurance policy.  It would have been possible for Plaintiff to reside most of the time with her father at the insured property, thus complying with the policy, while also maintaining (and receiving mail at) her residence at

the Forest Hills house; indeed, that apparently was her living arrangement up until 2005.

The undisputed evidence shows that Plaintiff no longer resided at the Queens Village property after 2005, which she acknowledged multiple times during her depositions.  She therefore did not comply with the clear and unambiguous terms of the insurance contract preferred by Defendants.

However, the court's inquiry is not complete, because there is a dispute of fact regarding whether Plaintiff actually received the full terms of the insurance policy from Allstate, which prevents the court from granting summary judgment in favor of Defendants on Plaintiff's breach of contract claim.

## II.   Whether Plaintiff Received the Full Terms of the Insurance Policy

Plaintiff has raised an argument that prevents the court from granting summary judgment to Defendants, which is that Defendants failed to provide her with a copy of the full policy that was in place at the time of the fire in 2015.  (*See* Pl. Mot. at 3.)  She alleges that Allstate only provided her with invoices, which she understood to contain the "full text of the policy," but never the full standard homeowner's policy upon which Allstate relied to deny coverage.  (*Id.*)  Plaintiff proffered a copy of an invoice, which lists the premium that was due, and several pages of notices and declarations about her

11

policy, but not the full version of the standard homeowner's
policy that contained the requirements that she reside at the
insured house and notify Allstate of any occupancy changes.
(Pl. Ex. 1.)  At one of her depositions, Plaintiff affirmed
multiple times under oath that "no one ever mailed [her] the 20-
plus page" policy, and that she had "never seen [it]" prior to
it being provided by Defendants during this litigation.  (ECF
No. 89-2, Def. Ex. A, Plaintiff's January 7, 2016 Deposition
Transcript, at 28:11-18; *see id.* at 29:9-12, 30:3-20, 34:6-21.)

Where a matter is "within the control of an insurer,
[the insurer] will thus generally bear some of the
responsibility for an insured's lack of knowledge . . . ."  *Olin
Corp. v. Ins. Co. of N. Am.*, 966 F.2d 718, 725 (2d Cir. 1992)
(citing *Padavan v. Clemente*, 43 A.D.2d 729, 350 (2d Dep't
1973)).  "It is a basic tenet of insurance law that once an
insurance contract is accepted by both parties, the parties are
bound by it," *Gerrish Corp. v. Universal Underwriters Ins. Co.*,
947 F.2d 1023, 1028 (2d Cir. 1991), but Plaintiff could not have
accepted terms that she never received.  If it were true that
Allstate never provided Plaintiff with a copy of the relevant
insurance policy, which included the requirements that the
insured must reside at the insured house and notify Allstate of
any occupancy changes, that could excuse Plaintiff's failure to
comply with those terms; "if Plaintiff did not receive the

policies, Plaintiff should not be expected to know the content of the policies . . . ." *Schuster v. Paul Revere Life Ins. Co.*, No. 00-cv-997, 2001 WL 1602963, at *2 (S.D.N.Y. Dec. 12, 2001).

The court notes that the copy of the full homeowner's policy proffered by Allstate, on its face, appears to show that it was mailed to Plaintiff at her house in Forest Hills.  The first page of the document is addressed to her, and begins: "A new policy period is about to begin.  Here are your renewal materials."  (ECF No. 89-5, Def. Ex. D at -547.)  Furthermore, the invoice proffered by Plaintiff explicitly cross-references that policy.  It states: "Your Homeowners policy consist of this Policy Declarations and the documents listed below. . . . Standard Homeowners Policy form AP315."  (Pl. Ex. 1 at 3.)

Allstate, however, has not proffered any evidence showing that the full policy was actually mailed to Plaintiff, or that it was provided to her in some other manner.  Despite the fact that the policy listed Plaintiff's name and address, it does not contain her signature, and Allstate has not put forth an affidavit or business record confirming that it was provided to her.  Defendants' statement of undisputed facts states that the policy was "issued" to Plaintiff, but it does not clarify how, when, or if it was provided to her.  (*See* Def. 56.1 ¶ 10.) All Defendants argue in response to Plaintiff's argument that she never received the full policy is that they "produced the

2015 policy during discovery, and on two additional occasions
pursuant to Court orders thereafter." (Def. Reply at 7 n.5.)
But whether Allstate produced the policy to Plaintiff after the
litigation began is irrelevant to whether Plaintiff had a copy
of it at the relevant time.  If Plaintiff did not receive a copy
of it, she could not have agreed to comply with the terms upon
which Allstate has based its denial of coverage.

     Because Plaintiff has sworn under oath that she did
not receive a copy of terms of the insurance policy upon which
Allstate relied to deny her coverage, and Defendants have not
offered evidence to the contrary, this factual issue is in
dispute, and it is material to Plaintiff's claim. *See Schuster*,
2001 WL 1602963, at *2 (denying summary judgment because
"[w]hether Plaintiff actually received copies of the policies is
a material fact in dispute").

     The court, therefore, will allow this case to proceed
to trial to resolve factual issue of whether Allstate provided
Plaintiff with a copy of the insurance policy in effect at the
time of loss.

### III. Plaintiff's Other Claims and Allegations Regarding Allstate's Conduct

     Plaintiff also makes several other accusations about
Allstate's conduct, including that Allstate exhibited "corrupt
intent in denying the claim" by reporting allegedly "fabricated

14

fraudulent acts" to the New York Department of Financial Services ("DFS"). (Pl. Reply at 4.) This allegation relates to Plaintiff's contention that Allstate "falsely accused the Plaintiff's father of arson in a report to the DFS," which Plaintiff contends is part of a "smear[] campaign" against her. (Pl. Mot. at 3.) In his R&R, Judge Bulsara liberally construed the broad allegations contained in Plaintiff's complaint on this point as pleading a claim for defamation. (R&R at 3.)

"Under New York law, the elements of a defamation claim are 'a false statement, published without privilege or authorization to a third party, constituting fault . . . and it must either cause special harm or constitute defamation *per se*.'" *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003) (quoting *Dillon v. City of New York*, 261 A.D.2d 34, 38 (1st Dep't 1999) (alteration in original)). This court is not aware of any precedent suggesting that an insurance company's report of a suspected arson to a government agency, regardless of whether or not arson actually occurred, could give rise to a claim for defamation. Moreover, Plaintiff has not provided any published document from Defendants that contains a false (or even potentially false) statement about her. Plaintiff relies only on a letter from the DFS to Allstate, which states that DFS had "received [Allstate's] report of suspected insurance fraud . . . ." (ECF No. 91-2, referred to

by Plaintiff as Ex. 28.)  Because Plaintiff, even after
discovery, has not proffered any statement by Defendants about
Plaintiff that could plausibly support a claim for defamation,
summary judgment is granted for Defendants on Plaintiff's
defamation claim.

Judge Bulsara also liberally construed Plaintiff's
complaint as pleading claims for negligence and fraud.  (R&R at
3, 13.)  Judge Bulara found, however, that these claims were all
redundant of Plaintiff's breach of contract claim.  (R&R at 13-
14) *see New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 319
(N.Y. 1995) (allegation of fraud that "merely evidence
plaintiff's dissatisfaction with defendants' performance of the
contract obligations . . . does not state a tort claim, it
merely raises a question for the fact finder determining the
breach of contract claim").  The undersigned agrees with Judge
Bulsara and adopts his reasoning regarding Plaintiff's potential
claims for negligence and fraud.  Summary judgment is granted
for Defendants on those claims.  Plaintiff's only viable claim
is for breach of contract.

Furthermore, Plaintiff makes accusations about
Allstate's conduct throughout the course of this litigation.
(*See, e.g.*, Pl. Reply at 5 (Defendants withholding materials in
discovery and refusing to accept service of motion papers by
hand).)  Plaintiff previously moved for sanctions, but Judge

16

Bulsara found that Defendants' conduct during discovery, which

he supervised, did not warrant sanctions.  (ECF Dkt. Order April

29, 2020.)  Nor does the court now find that any of Defendants'

conduct has been improper.  While Plaintiff repeatedly asserts

that her case is "straightforward," the court does not agree,

which is why a jury must ultimately decide the dispositive

factual question described above.  Defendants are equally

entitled to make arguments in support of their case.

## IV.  Defendant Schaefer

Plaintiff named as a defendant Kevin Schaefer, the

Allstate agent whose name appears on the correspondent between

Allstate and Plaintiff in 2015.  Judge Bulsara previously found

that "none of the causes of action—either pled in the Complaint

or identified by the Court from the factual allegations—could be

viable against Schaefer."  (R&R at 17.)  The undersigned agrees,

for the same reasons stated in Judge Bulsara's R&R.  None of

Plaintiff's allegations, even construed liberally, could result

in Mr. Schaefer's liability.  *See Gov't Employees Ins. Co. v.

Saco*, No. 12-cv-5633, 2015 WL 4656512, at *4 (E.D.N.Y. Aug. 5,

2015) ("The New York Court of Appeals has firmly established the

rule that 'where there is a disclosed principal-agent

relationship and the contract relates to a matter of the agency,

the agent will not be personally bound unless there is clear and

explicit evidence of the agent's intention to substitute or

17

superadd his personal liability for, or to, that of his
principal.'") (quoting *Mencher v. Weiss*, 114 N.E.2d 177, 179
(N.Y. 1953)).

Accordingly, summary judgment is granted in favor of
Defendants on all of Plaintiff's claims against Mr. Schaefer.

## V.   Plaintiff's Motion for Recusal

Finally, Plaintiff filed a motion requesting that both
the undersigned and Judge Bulsara recuse themselves from this
case, which Defendants opposed.  (*See* ECF Nos. 100-02.)
Plaintiff questions the court's "impartiality" because, *inter
alia*, "the defendants are not being referred for criminal
investigation," the court has "demonstrated leniency in refusing
to impose sanctions against the defendants' violation of court
orders," and the court has apparently engaged in an unspecified
"depriv[ation]" of Plaintiff's First Amendment rights.  (ECF No.
100, Plaintiff's Motion for Sanctions, at 1.)

"[O]pinions formed by the judge on the basis of facts
introduced or events occurring in the course of the current
proceedings, or of prior proceedings, do not constitute a basis
for a bias or partiality motion unless they display a deep-
seated favoritism or antagonism that would make fair judgment
impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994).
Plaintiff's disagreements with the court's prior rulings do not
constitute valid grounds for the relief she is seeking.  *See*

*LoCascio v. United States*, 473 F.3d 493, 495 (2d Cir. 2007)
("judicial rulings alone almost never constitute a valid basis
for a bias or partiality motion") (quotation omitted).  Both
this court and Judge Bulsara have decided issues impartially,
and will continue to decide issues impartially, based on binding
law and the parties' evidence.

The court appreciates Plaintiff's frustration with the
unfortunate situation in which she finds herself.  A home that
she owned was destroyed in a fire, which no doubt was a
devastating event.  But there is no evidence that has been
presented to the court that Defendants have committed a crime
against her, nor would this court have the power to direct a law
enforcement agency to open a criminal investigation.  Defendants
appear only to be exercising their right to make arguments based
on the unambiguous language of the insurance policy.  The court
is not deciding today whether Allstate was in fact justified in
its decision to deny coverage, but Allstate has made a
reasonable argument in support of its position.  Though
Plaintiff disagrees with Allstate's decision and arguments, she
must litigate her claim within the confines of the federal rules
and procedures governing civil cases, without continuously
filing motions for sanctions or recusal every time she disagrees
with Defendants' arguments or a court ruling.  Plaintiff will

have her day in court, and she should focus on the narrow factual issue that the court has identified for trial.

Accordingly, Plaintiff's motion for recusal is denied. Any future motions brought by Plaintiff that are deemed to be frivolous will likewise be denied, and may result in sanctions against Plaintiff.

## Conclusion

For the foregoing reasons, Plaintiff's motions for summary judgment and for recusal are DENIED. Defendants' motion for summary judgment is GRANTED IN PART. This case shall proceed to trial on the sole material factual dispute remaining in the case, which is whether Allstate provided the relevant terms in the insurance policy to Plaintiff in advance of her loss. The parties are directed to appear before the court for a telephonic status conference on Tuesday, December 15, 2020, at 11:00 a.m. The parties should dial into the status conference by using the dial-in information that will be provided on the docket.

The Clerk of Court is respectfully directed to terminate Kevin Schaefer as a defendant in this action, to mail a copy of this Memorandum and Order and the corresponding docket entry that contains the dial-in information for the status conference to the *pro se* Plaintiff at her address of record, and to note the mailing on the docket.

**SO ORDERED.**

Dated:     Brooklyn, New York
           November 23, 2020

                              _____/s/_____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge