United States District Court
Eastern District of New York

------------------------------------X

Eva Mallek,

          Plaintiff,               **Memorandum and Order**

   - against -             No. 17-cv-05949 (KAM)
                             (SJB)

Allstate Indemnity Company,

          Defendant.

------------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

On May 18, 2023, the Second Circuit affirmed in part this Court's grant of summary judgment in favor of *pro se* Plaintiff Eva Mallek ("Plaintiff") on her breach of contract claim against Defendant Allstate Indemnity Company ("Defendant"). The Second Circuit vacated the judgment solely as to this Court's award of $358,000, the face value of Plaintiff's insurance policy, as Plaintiff had not submitted evidence that established the nature, extent, and amount of loss, beyond her assertion that "a fire destroyed the structure and contents of her home." (ECF No. 1-2 ¶ 1); *Mallek v. Allstate Ins. Co.*, No. 22-86, 2023 WL 3513783, at *3 (2d Cir. May 18, 2023). Presently before the Court are the parties' submissions regarding damages. For the reasons below, the Court awards Plaintiff damages in the amount of $358,000.

## BACKGROUND

This case's history is extensive, and the Court assumes familiarity with the underlying facts and procedural history, as recounted in its two summary judgment orders, and the Second Circuit's opinion. (*See* ECF Nos. 104, 143, and 154.) The Court recites only what is necessary to explain this decision.

This case began in 2017 when Plaintiff sued Defendant, among others, for breaching her homeowner's insurance contract by declining to pay a claim after a fire destroyed a house that Plaintiff owned and had insured, but did not occupy. On December 15, 2021, this Court granted summary judgment on Plaintiff's breach of contract claim, awarding her $358,000 in damages (the face amount of the policy). (*See* ECF Nos. 143, 144.) Defendant appealed. (ECF No. 147.)

On May 18, 2023, the Second Circuit affirmed this Court's decision regarding Defendant's liability but vacated the decision awarding Plaintiff $358,0000 in damages because Plaintiff failed to proffer evidence in support of such damages. *See Mallek*, No. 22-86, 2023 WL 3513783, at *3. The Second Circuit vacated the judgment solely to permit Plaintiff to submit evidence in support of her claim for damages, affirmed the remaining part of this Court's decision, and remanded for further proceedings. *See id.*

On June 8, 2023, the Second Circuit's Mandate issued, and this Court directed the parties to appear before then-Magistrate

Judge Sanket J. Bulsara for a damages inquest. (ECF No. 155; June 8, 2023 Order.) A status conference was scheduled for July 11, 2023, but Plaintiff did not appear. (July 11, 2023 Order.) Judge Bulsara then set another conference date for August 1, 2023. (July 11, 2023 Order.) On the same day, Plaintiff filed a pro se letter indicating that she had attempted to arrive for the conference but was delayed due to the subway, and she requested to "attend future meetings on-line if that would be agreeable." (ECF No. 159.)

On August 1, 2023, Plaintiff again did not appear for the scheduled conference. (ECF No. 160.) That same day, Judge Bulsara ordered written submissions from the parties in lieu of scheduling a third conference. (*Id.*) He noted that the purpose of the conference to which Plaintiff did not appear was to inform her of the submissions required of her "to recover monies under the insurance policy[.]" (*Id.* at 1.) Judge Bulsara ordered Plaintiff to submit in writing the amount of damages she was seeking and to provide proof to support those damages by August 29, 2023. (*Id.* at 2.) Specifically, he ordered that Plaintiff could submit proof of damages "in the form of appraisals conducted by third parties who provide estimates as to the cost of rebuilding or replacing her home," and that Defendant was permitted to respond. (*Id.* at 2.) Judge Bulsara noted that he would then "issue a Report and Recommendation about the damages to be awarded[.]" (*Id.* at 2.)

On November 28, 2023, after numerous orders by Judge Bulsara

3

and this Court directing Plaintiff to file proof of damages, Plaintiff filed a letter that included a contractor's proposal for rebuilding her home. (ECF No. 169 ("Pl. Ltr.").)[1] Plaintiff's letter further requested that "Defendants also pay for the cost of the contents of the property to the policy limit of $150,000 as well as for the loss of the garage $30,000 (listed in the policy under 'other structure loss')," and that Defendants "are also responsible for paying interest on the monies withheld for eight years without cause." (*Id.* at 1.)

On December 26, 2023, Defendant filed the Declaration of Thomas H. Cellilli, III, Esq. ("Thomas Declaration") in support of Defendant's position on damages. (ECF No. 170 ("Thomas Decl.").) The Thomas Declaration disputes Plaintiff's contention that her property was a "total loss," and states that Defendant "has never admitted that the home was a 'total loss' and that [the] issue remains in dispute necessitating this inquest on damages." (*Id.* ¶ 3.) The Thomas Declaration further states that "[s]ince Plaintiff is no longer the owner of the property and not capable of repairing or replacing" the property, "the terms of the standard insurance policy apply and that the proper measure of damages would be the actual cash value of the property at the time of the loss." (*Id.* ¶ 7 (citing ECF No. 170-2, Exhibit B, N.Y. Insurance Law § 3404).)

---

[1] The Court cites to the ECF-paginated numbers of this filing.

Finally, the Thomas Declaration opposes Plaintiff's claim of loss of the property's contents and the loss of the garage. (*Id.* ¶ 8.)

Defendant also includes the Declaration of Michael R. Nicholson ("Nicholson Declaration") and a "building estimate...on both an actual cash value and replacement cost basis." (ECF No. 170-3 ("Nicholson Decl.") ¶ 11; *see* ECF No. 170-6, J.S. Held LLC Building Estimate ("Def. Building Est.").) The building estimate states the "actual cash value of the loss, including permits, fees, overhead and profit is $150,936.89" and the "replacement cost value is $194,694.79." (Nicholson Decl. ¶ 11; *see* Def. Building Est. at 13.)

On January 26, 2024, Plaintiff filed a reply primarily questioning (a) the credibility of Defendant's building estimate because Mr. Nicholson did "not disclose the fee paid to his company" and (b) the accuracy of the building estimate for failing to comport with Plaintiff's "personal experience" in realistic construction costs. (ECF No. 171 at 1.) Plaintiff further reiterates that "Defendants owe Plaintiff a sum beyond the full policy amount covering the loss of the structure" and that "[i]nterest on sums owed are [] to be applied[.]" (*Id.* at 3.)

On May 1, 2024, Plaintiff filed a letter making a "second request for an inquest hearing to conclude this case" and noting she had "to-date complied with all requirements...regarding proof of [her] total loss (property structure and contents)[.]" (ECF No.

173 at 1.) This Court denied Plaintiff's "second request for an inquest hearing" and stated that the Undersigned, instead of Judge Bulsara, would "decide the damages based on the parties' written submissions" at ECF Nos. 169 (Plaintiff's letter enclosing contractor's proposal to rebuild); 170 (Defendant's response); and 171 (Plaintiff's reply)." (July 2, 2024 Order.) The Court further noted that "[t]o the extent Plaintiff seeks coverage for the contents in the insured premises and other structures (the garage), she shall similarly submit an appraisal documenting the loss and an appraisal to rebuild structures other than the residence." (*Id.*)

On July 16, 2024, Plaintiff requested an extension of time to provide documentation of the additional losses of the garage and contents of the property and stated she did "not have access to [her] property" because her "deed was stolen." (ECF No. 174.) She implied she would soon regain access to the property when "the criminal administrative office at the Queens County District Attorney's Office will file the appropriate motion to return the deed back to me at the end of July 2024." (*Id.* at 2.)[2] The Court granted Plaintiff's requested extension of time to file proof of

---

[2] Plaintiff includes, as "Exhibit 1" to her letter, an email from Assistant District Attorney Christina Hanophy to Plaintiff, stating that "we prosecuted defendant Justin Joseph for stealing your deed" and noting that "the People will be moving...for an Order to Vacate all the deeds that the defendant stole...by the end of July....Once that happens, the fraudulent deeds will be voided, and the house will once again be in your name." (ECF No. 174 at 5.)

the additional losses and any documentation as to whether she is the current deeded owner of the property until August 26, 2024. (July 23, 2024 Order.)

On July 24, 2024, Plaintiff filed a letter requesting the Court "issue an order for the release of funds" on her claim. (ECF No. 175.) This Court issued an Order reminding Plaintiff that she requested time to submit documentation of the loss of contents and other structures, and that this Court had ordered that it would decide damages based on the parties' written submissions, which included the anticipated documentation of the loss of contents and other structures that Plaintiff had requested to submit but had not yet done so. (August 7, 2024 Order.)

On October 18, 2024, Plaintiff submitted various letters to the Court that, *inter alia*, requested an extension of time until December 2024 to file an "appraisal documenting loss of the home contents" and an "appraisal to rebuild structures other than the residence." (ECF Nos. 178, 179.) This Court granted Plaintiff's request for an extension of time to December 9, 2024, and granted time until December 16, 2024, for Defendants to file a response, if any, to the anticipated appraisals. (October 23, 2024 Order.) On October 24, 2024, before Plaintiff was likely to have received a copy of this Court's October 23, 2024 Order, Plaintiff filed a letter requesting, *inter alia*, the "immediate release of funds on her insurance claim covering the loss of her property structure[.]"

(ECF No. 180.)

To date, Plaintiff has not filed appraisals documenting the loss of contents or cost to rebuild structures other than the residence.

## LEGAL STANDARD

"Under New York law, '[t]o justify an award of damages, the insured must prove the nature, extent and amount of its loss under the policy to a reasonable degree of certainty.'" *Mallek*, No. 22-86, 2023 WL 3513783, at *3 (quoting *Simplexdiam, Inc. v. Brockbank*, 727 N.Y.S. 2d 64, 67 (1st Dep't 2001)) (citing *Imrie v. Ratto*, 171 N.Y.S. 3d 620, 625 (3d Dep't 2022)); *see Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007) ("[D]amages...'must be not merely speculative, possible, and imaginary, but they must be *reasonably certain* and such only as actually follow or may follow from the breach of the contract.'" (emphasis in original) (citation omitted)).

Importantly, "'[t]he rule of certainty as applied to the recovery of damages does not require mathematical accuracy or absolute certainty or exactness, but only such reasonable certainty as serves as a basis for the ordinary conduct of human affairs.'" *Warehouse Wines & Spirits, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 13-cv-5712 (KBF), 2016 WL 3911949, at *12 (S.D.N.Y. July 14, 2016) (quoting 36 N.Y. Jur. 2d Damages § 12 (2016)) (footnotes omitted)), *aff'd sub nom. Warehouse Wines & Spirits v.*

*Travelers Prop. Cas. Co. of Am.*, 711 F. App'x 654 (2d Cir. 2017)); *Lexington Prods. Ltd. v. B. D. Commc'ns, Inc.*, 677 F.2d 251, 252-53 (2d Cir. 1982) (noting that "New York courts do not require scientific rigor in the calculation of damages" and "find[ing] evidence in the record from which substantial damages may be computed with reasonable certainty").

Further, though "[t]he insured bears the burden of proving the amount of damage...[o]nce the fact of damages is established '[t]he plaintiff need only show a stable foundation for a reasonable estimate of the damage incurred as a result of the breach.'" *Warehouse Wines & Spirits*, 711 F. App'x at 657 (internal citation and footnote omitted) (quoting *Tractebel Energy Mktg., Inc.*, 487 F.3d at 110).

## DISCUSSION

In the first instance, the Court may decide the question of damages on the papers. To determine damages, a court may, but need not, hold a hearing. "If the documentary evidence is sufficient, Plaintiffs may prove those damages without a hearing." *See Yiwu Lizhisha Accessories Co. v. JJamz, Inc.*, No. 16-cv-06418 (JPO) (SN), 2019 WL 2775605, at *2 (S.D.N.Y. June 14, 2019) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)) (finding plaintiffs "offered sufficient documentary evidence to ascertain damages with reasonable certainty without the need for a hearing" following

damages inquest after grant of summary judgment for liability on outstanding debts).

Here, Plaintiff submitted a multi-page proposal from the construction company J&N Remache Corp. for the anticipated project of "House Gut Renovation" ("the Proposal"), detailing a three-phrase project comprising removal of burned debris and required demolition, inspection for additional damage, and renovation, and providing that an estimated total cost for the Proposal is at least $358,000, exclusive of taxes and refurbishing the foundation of the home. (Pl. Ltr. at 3-12 (including proposal).) As discussed below, the J&N Remache Corp. Proposal further specifies the proposed demolition and renovation phases into subparts covering various areas of the home. (*Id.*) Defendant, in turn, submitted an affidavit from its counsel supporting its position on damages, plus six exhibits, including, *inter alia*, the Nicholson Declaration from the Vice President of the company J.S. Held (which conducts damages and construction consulting and estimating, and property replacement cost appraisals) and a multi-page building estimate prepared on an actual cash value and replacement cost basis. (*See* Nicholson Decl.; Def. Building Est.) Accordingly, the Court finds the documentary evidence to be sufficient such that a hearing is not required. *See Yiwu Lizhisha Accessories Co.*, No. 16-cv-06418 (JPO) (SN), 2019 WL 2775605, at *2.

## I.    Damages

The Second Circuit found this Court erred in awarding Plaintiff damages of $358,000, the face value of her insurance policy, "when she proffered no evidence in support of her damages." *Mallek*, No. 22-86, 2023 WL 3513783, at *3. The Second Circuit noted that Plaintiff had "not submitted evidence with respect to the cost of rebuilding or replacing her destroyed home," and that "to be awarded the face value of the policy, Mallek must submit evidence (which Allstate may then attempt to rebut) to show that the extent of her loss was at least $358,000." *Id.*

### A.    Plaintiff's Evidence Establishes Extent of Loss is at Least $358,000

The Court finds Plaintiff has submitted evidence with respect to the cost of demolition and removal of burned areas and "rebuilding or replacing her destroyed home." *Id.* The Proposal that Plaintiff proffers to rebuild her home establishes the work required to rebuild after removal of the damage caused by the fire and establishes that "the extent of her loss" due to the fire "was at least $358,000." *Mallek*, No. 22-86, 2023 WL 3513783, at *3. The Proposal reasonably contemplates that rebuilding the home following damage from the fire requires, for example, removing burned personal debris, demolishing and removing finishes, assessing for further areas of damage due to fire or weather exposure, and then renovating. (Pl. Ltr. at 3-12.) The Proposal

11

states that the total cost of the work in the Proposal is $380,000.00, excluding sales tax and various other items, such as refurbishing the foundation. (*Id.* at 10, 12.)

Although the Proposal does not itemize costs, it specifies the anticipated demolition work into subparts concerning the ceiling, walls, flooring, framing, plumbing, electrical, doors, windows, and insulation; for each subpart, the Proposal indicates specific demolition work required for the burned components. (*Id.* 6-7.) The Proposal further specifies the proposed renovation work into subparts concerning framing, ceilings, walls, bathrooms, kitchen, flooring, carpentry, electrical, and tape, plaster, calking, and paint. (*Id.* at 8-10.) The Proposal further describes the subparts of the demolition and renovation work into more detail of the scope of work. (*Id.*) Finally, the Proposal explicitly excludes restoring the façade, the foundation, "independent walls," and the city water supply line, gas supply line, electrical supply lines, and sewer connection. (*Id.* at 10.) These exclusions from the J&N Remache Corp. estimate indicate the cost to rebuild Plaintiff's property will reasonably exceed the $380,000 quoted in the Proposal, and is reasonably certain to exceed the policy limit of $358,000.

Accordingly, the Court finds that Plaintiff's Proposal constitutes "evidence with respect to the cost of rebuilding or replacing her destroyed home" that shows "the extent of her loss

12

was at least $358,000." *Mallek*, No. 22-86, 2023 WL 3513783, at *3; *see Zaitchick v. Am. Motorists Ins. Co.*, 554 F. Supp. 209, 217 (S.D.N.Y. 1982) (accepting plaintiff's "evidence that it would cost $100,862 to rebuild their home" when evaluating damages due after finding insurance company liable under insurance contract following fire destroying home), *aff'd sub nom. Zaitchick v. Am. Motors Ins.*, 742 F.2d 1441 (2d Cir. 1983), *cert. den.* 464 U.S. 851 (1983); *see also Everest Reinsurance Co. v. PRBK, LLC*, No. 09-cv-5607 (KAM) (JMA), 2010 WL 5490950, at *3 (E.D.N.Y. Dec. 10, 2010) (in context of subrogation default judgment, finding documentation including, *inter alia*, itemized list of costs to repair building organized by "trade" like "finished carpentry, flooring, plumbing, masonry, etc." sufficient to award damages without hearing), *report and recommendation adopted*, No. 09-cv-5607 (KAM) (JMA), 2011 WL 13924 (E.D.N.Y. Jan. 4, 2011).

**B.    Defendant Does Not Rebut Plaintiff's Evidence That The Loss Was at Least $358,000**

Defendant's proffered evidence of, *inter alia*, a building estimate "on both an actual cash value and replacement cost basis" does not rebut Plaintiff's evidence that her loss was at least $358,000. (Nicholson Decl. ¶ 11; *see* Def. Building Est.)

Defendant argues that "the proper measure of damages would be the actual cash value of the property at the time of the loss" because "Plaintiff is no longer the owner of the property and not

capable of repairing or replacing" the property. (Thomas Decl. ¶ 7.) Defendant appears to argue that the Standard Fire Insurance Policy outlined in New York Insurance law § 3404, which "sets minimum coverage standards for such policies," *Quaker Hills, LLC v. Pac. Indem. Co.*, 728 F.3d 171, 176 (2d Cir. 2013), should govern how Defendant pays damages, because this Court "determined that Allstate has not proved the Policy Jacket was delivered during the effective coverage period," and thus "the manner described therein" regarding how Defendant would pay for a loss "is inapplicable." (Thomas Decl. ¶¶ 4, 6-7.)

In the first instance, as noted in this Court's December 15, 2021 Memorandum and Order, although the Court found Defendant failed to rebut Plaintiff's sworn testimony that Defendant did not deliver a copy of the Standard Homeowners Policy to her before her loss, and Defendant was thus "equitably estopped from denying" Plaintiff coverage, the Court specifically found that "Defendant must cover Plaintiff's losses *under the terms of the 2015-2016 insurance policy* issued to Ms. Mallek." (ECF No. 143, Memorandum and Order ("M&O") at 28-31 (emphasis added).) The Court further noted that the "relevant insurance policy for the coverage related to the September 14, 2015, fire is the policy in effect for the time-period from March 20, 2015 to March 20, 2016," which Defendant had proffered at ECF No. 89-5, as Exhibit D, Standard Homeowners Policy Declarations ("Policy"), as part of its summary judgment

14

briefing. (*Id.* at 9.)

Further, the governing Policy's subsection titled "How We Pay For A Loss" states, in relevant part, that "[i]f you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis," but "[y]ou may make claim for additional payment...if you repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment." (Policy at 36.)[3] In other words, the Policy contemplates that an insured may receive payment beyond "actual cash value" upon repairing or replacing a property after receiving an "actual cash value payment." *Id.*

The Court respectfully rejects as meritless Defendant's contention that the actual cash value of the loss is a proper measure of damages. Courts in this Circuit have found that replacement cost, not actual cash value, appropriately measures the value of damages if an insurer initially denies a claim, even if the policy states the insured must repair or replace the damaged property before claiming damages beyond the actual cash value. *See, e.g.*, *Zaitchick*, 554 F. Supp. at 215-17 (rejecting defendant's contention that it was "liable only for the actual cash value of the house immediately before the fire" because "case law and equitable considerations render replacement cost the appropriate

---

[3] The Court cites to the ECF pages of this filing.

method of valuing plaintiffs' damages" when "plaintiffs were refused any monies" under insurance contract, and, "[n]ot surprisingly...were unable to replace their home"); *see Summerwind West Condominium Owners Association Inc. v. Mt. Hawley Insurance Company & Syndicate 1458 at Lloyd's of London*, No. 22-cv-3165 (JPC), 2025 WL 691663, at *9 (S.D.N.Y. Mar. 3, 2025) (noting that "[w]here insureds 'were refused any monies under the insurance contract,' and as a result are 'unable to replace their [property],' they may be 'excuse[d]...from performance of the replacement condition' because the insurer's conduct made it impossible to fulfill the condition precedent" and collecting cases (modifications in original) (quoting *Zaitchick*, 554 F. Supp. at 217)).

Here, Defendant denied Plaintiff's claim and never made an actual cash value payment. Therefore, the proper measure of Plaintiff's damages, up to the limits of the policy, is "damages to cover the replacement of [the] house, commonly referred to as replacement cost," and not the actual cash value. *Zaitchick*, 554 F. Supp. at 215-17 (excusing plaintiffs from performance of replacement condition and awarding damages following plaintiffs' "evidence that it would cost $100,862 to rebuild their home"); *see Woodworth v. Erie Ins. Co.*, 743 F. Supp. 2d 201, 218 n.14 (W.D.N.Y. 2010) ("[I]t is the law in New York that a complete failure to pay actual cash value, which prevents the insured from rebuilding or

16

replacing, may excuse the insured from performing the condition precedent of rebuilding or replacing."), *reconsidered in part*, No. 05-cv-6344 (CJS), 2011 WL 98494 (W.D.N.Y. Jan. 12, 2011).

Defendant further contends that actual cash value is the appropriate measure of damages because Plaintiff "is no longer the owner of the property and not capable of repairing or replacing" the property. (Thomas Decl. ¶ 7.) Whether Plaintiff may be awarded damages beyond the actual cash value, however, does not turn on whether Plaintiff currently owns the property. The Policy expressly contemplates that the insured can "replace the damaged building" "at an address other than shown on the Policy Declarations though construction of a new structure or purchase of an existing structure[.]" (Policy at 36); *see Matos v. Peerless Ins. Co.*, No. 14-cv-120SR, 2017 WL 444687, at *11 (W.D.N.Y. Feb. 2, 2017) ("[P]laintiff's sale of the property does not preclude replacement cost coverage; the insured may replace the premises with a property with similar functionality at another location." (citing *SR Int'l Bus. Ins. Co. Ltd v. World Trade Center Properties, LLC*, 445 F. Supp. 2d 320, 334 (S.D.N.Y. 2006) ("[C]ourts have held that a homeowner could use replacement proceeds to build a different kind of home at another location[.]" and *Kumar v. Travelers Ins. Co.*, 211 A.D.2d 128, 132 (4th Dep't 1995) ("insured is not required...to replace the damaged dwelling on the same premises in order to recover replacement cost."))).

17

Further, Defendant's building estimate on a replacement cost basis fails to rebut Plaintiff's evidence that her losses are at least $358,000. The Nicholson Declaration notes the replacement cost value is $194,694.79——less than the policy limit——and that there are two "major cost differences" between Defendant's building estimate and Plaintiff's Proposal. (Nicholson Decl. ¶¶ 11, 13.) First, the Nicholson Declaration claims that Plaintiff's Proposal "values the loss on a replacement cost basis utilizing current construction costs which are significantly higher than at the time of the loss." (*Id.* ¶ 13.) Second, the Nicholson Declaration appears to imply that Plaintiff's Proposal improperly includes costs to repair damages not attributable to the fire but to Plaintiff's failure to secure the property and make timely repairs. (*Id.* (stating that Plaintiff's Proposal states a higher cost because it "does not account for the fact that the structure was exposed to the elements for eight years and the failure to secure the property and make timely repairs contributed to additional damages and scope").)

Defendant's claim that Plaintiff's Proposal improperly uses current construction costs, without more, does not rebut Plaintiff's Proposal that the cost to rebuild exceeds the policy limit. Defendant fails to reference any specific portion of Plaintiff's Proposal or provide further detail comparing, for example, specific construction costs between Plaintiff's Proposal

18

and Defendant's building estimate to explain how "current construction costs...are significantly higher than at the time of the loss." Indeed, Defendant does not cite law supporting the proposition that it is improper for Plaintiff's Proposal to be based on current costs, even if those costs have increased over the years, in large measure due to Defendant's ongoing refusal to pay Plaintiff under her policy. *See Zaitchick*, 554 F. Supp. at 212, 17 (noting that "[i]t is to be expected, after a number of years of high inflation, that the replacement cost will be much higher than the actual cash value").

Further, the Policy contemplates limiting "Building Structure Reimbursement" to the smallest of: (1) "the replacement costs of the part(s) of the building structure(s) for like kind and quality construction, for similar use, on the same premises;" (2) "the amount actually and necessarily spent to repair or replace the damaged building structure(s) with like kind and quality construction, for similar use, on the same premises;" or (3) "the limit of liability applicable to the building structure(s)[.]" (Policy at 36.) Defendant does not point to any part of Plaintiff's Proposal to show, much less suggest, that it will not use "like kind and quality construction, for similar use[.]" (Policy at 36); s*ee Zaitchick*, 554 F. Supp. at 217 (accepting plaintiff's evidence "that it would cost $100,862 to rebuild their home" after fire

where defendant "did not establish that the original house owned by plaintiffs was less expensive").

Next, Defendant's claim that Plaintiff's Proposal improperly includes costs to repair damages for exposure to the elements does not rebut Plaintiff's evidence that the cost to rebuild exceeds the policy limit. The Nicholson Declaration fails to identify any part of the Proposal that addresses such "additional damages and scope" from failure to "secure the property and make timely repairs." (Nicholson Decl. ¶ 13.) Further, Defendant cites no law for the proposition that payments for remedying a damaged structure's exposure to the elements when rebuilding or replacing are improper, particularly where the insurer has denied funds to protect the structure from the elements. Indeed, the Policy states that payment for "Building Structure Reimbursement...includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a building structure damaged by a covered loss." (Policy at 36.)

Accordingly, Defendant's building estimate fails to rebut Plaintiff's evidence that her losses are at least $358,000.

## II. Interest

In her letter providing evidence of the cost to rebuild, Plaintiff briefly states that Defendants are "responsible for paying interest on the monies withheld for eight years without

cause." (Pl. Ltr. at 1.) Plaintiff is entitled to post-judgment interest as prescribed by law. *See* 28 U.S.C. § 1961. Defendant's response does not reference interest or address Plaintiff's claim. To the extent Plaintiff seeks pre-judgment interest under N.Y. C.P.L.R. § 5001(a), her request is denied.

First, this Court originally awarded damages of $358,000, the "limit of liability," without prejudgment interest. (M&O at 31 n.8.; ECF No. 144.) The Second Circuit vacated the judgment "solely as to the amount of damages," with instructions that, "to be awarded the face value of the policy," Plaintiff must submit "evidence with respect to the cost of rebuilding or replacing her destroyed home." *Mallek*, No. 22-86, 2023 WL 3513783, at *3. The Second Circuit otherwise affirmed this Court's decision, without discussing pre-judgment interest.

Second, the Second Circuit has noted that, although under C.P.L.R. § 5001(a), "the default rule is that pre-award interest 'shall be recovered upon a sum awarded because of a breach of performance of a contract'...[s]tatutory pre-award interest is not required or available...where the parties' contract is 'sufficiently clear' that statutory interest was not 'contemplated by the parties at the time the contract was formed.'" *ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163, 178 (2d Cir. 2022) (citation omitted) (quoting C.P.L.R. § 5001(a)). As explained below, the insurance policy at issue does not provide for pre-

21

judgment interest.

In *ExxonMobil Oil Corp.*, the insurance policy at issue contained a paragraph regarding arbitration that read: "It is expressly agreed that any decision, award, or agreed settlement made as a result of an ADR process shall be limited to the limits of liability of this Policy." *Id.* at 179. The Second Circuit noted the paragraph "waive[d] the parties' rights to pre-award interest beyond the Policy limit under N.Y. C.P.L.R. § 5001(a), either in the arbitration itself or in the subsequent proceeding to confirm the award," because the paragraph was "a 'sufficiently clear' statement of the parties' intent to waive their right to statutory interest" where "the interest plus the principal award would exceed the Policy limit[.]" *Id.*

Here, the Policy appears to contain similar language. In the Policy's relevant Section I, titled "Your Property," paragraph two of "Section I Conditions" states: "Insurable Interest and Our liability: In the event of a covered loss, we will not pay for more than...the amount of coverage afforded by this policy." (Policy at 27, 34.) This language, as in *ExxonMobil Oil Corp.*, appears "'sufficiently clear'" that statutory interest was not contemplated for losses exceeding the policy limit. *ExxonMobil Oil Corp.*, 44 F.4th at 178-79. Although Plaintiff "did not receive notice of the terms" of the Policy, (M&O at 31), Plaintiff was on notice of the $358,000 policy limit, and thus awarding damages

22

beyond $358,000 would exceed her rights under the contract.

Indeed, in other instances of property damage from fire exceeding policy limits, courts in this state and Circuit have awarded the policy limit, even where insurers first disclaimed liability. *See, e.g.*, *Niagara BYG Cap., LLC v. Leatherstocking Coop. Ins. Co.*, 162 N.Y.S. 3d 650, 653 (N.Y. Sup. Ct. 2022) (where defendant denied coverage for fire damage based on certain policy exclusion, court refused to enforce exclusion that fell beneath standard fire insurance policy in Ins. Law § 3404, but entered judgment in amount of policy limit without prejudgment interest); *Zaitchick*, 554 F. Supp. at 217 (after property damage from fire exceeding policy limit, and where defendant denied coverage, court noted that because damages exceeded "maximum allocation under the insurance policy, defendant is liable for the entire $70,000 policy limit," without awarding prejudgment interest).[4]

Accordingly, because Plaintiff has established that the loss

---

[4] Courts, in context of non-fire related liability, have similarly limited damages to the policy limit. *See, e.g., Gov't Emps. Ins. Co. v. Saco*, No. 12-cv-5633 (NGG) (CLP), 2017 WL 1214433, at *3 (E.D.N.Y. Mar. 31, 2017) (in context of automobile insurance, noting "neither state law nor the Policies' terms obligate GEICO to pay prejudgment interest in excess of the Policy Limits"); *Alejandro v. Liberty Mut. Ins. Co.*, 924 N.Y.S. 2d 124, 125-26 (2d Dep't 2011) (after injuries in automobile accident, noting plaintiff "is not entitled to recover accrued prejudgment interest against the defendant awarded as part of the underlying judgment" where policy terms "limit its liability to $25,000, including prejudgment interest"); *Ashkenazy v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 665 N.Y.S.2d 99, 100 (2d Dep't 1997) (in context of wrongful death action, noting that "[a]bsent a contractual provision to the contrary, a liability insurance carrier is not liable for prejudgment interest in excess of the limits of the policy").

exceeds $358,000, the policy limit, prejudgment interest is not warranted.

## III. Plaintiff's Remaining Requests for Relief

Plaintiff's recent letters to this Court make numerous additional requests for relief beyond damages related to the property.

### A.    Garage and Contents of the Property

Plaintiff's letter attaching the Proposal includes a request that "Defendants also pay for the cost of the contents of the property to the policy limit of $150,000 as well as for the loss of the garage $30,000 (listed in the policy under 'other structure loss')." (Pl. Ltr. at 1.)

In its July 2, 2024 Order, this Court ordered that "[t]o the extent Plaintiff seeks coverage for the contents in the insured premises and other structures (the garage), she shall similarly submit an appraisal documenting the loss and an appraisal to rebuild structures other than the residence." (July 2, 2024 Order.) Despite the Court granting numerous extensions of time for Plaintiff to provide such documentation, and most recently an extension until December 9, 2024, Plaintiff has failed to provide such documentation. (*See, e.g.*, October 23, 2024 Order.)

Accordingly, because Plaintiff has not provided documentation regarding the "nature, extent and amount of its loss under the policy" as to the contents of the property, or the damage to the

garage, the Court declines to award damages related to such losses. *Mallek*, No. 22-86, 2023 WL 3513783, at *3.

**B.    CENLAR**

Plaintiff's recent letters note that CENLAR, a "subcontractor to CitiMortgage[,] is moving to foreclose on [her] property alleging [she] owe[s] $70,000 for among others a property insurance policy on a non-existent structure and other charges for guarding [her] vacant property in addition to legal fees." (ECF No. 178 at 4.) Plaintiff notes that the "case is being handled by NY state court," but nonetheless appears to seek relief from this Court "for coverage of accumulating charges currently $70,000, by third parties and CENLAR, against Plaintiff's mortgage account[.]" (*Id.* at 1, 4.) Because Plaintiff's requested relief does not pertain to this action, as Plaintiff states the "case is being handled by NY state court," the Court declines to address the requested relief.

**C.    Modification of the Caption**

Plaintiff's recent letters request a correction of the "caption to this case that wrongfully names Defendants 'Allstate Indemnity' instead of 'Allstate Insurance.'" (*Id.* at 1; *see* ECF Nos. 176, 177, and 180.)

Plaintiff is correct that the caption should be amended as follows: Defendant had previously noted that Allstate Insurance Company is the proper insurer. (*See* ECF No. 30 at 1 n.1 ("Defendants concede that Allstate Insurance is Plaintiff's

insurer, not Allstate Indemnity.").) Defendant's brief before the Second Circuit further stated that "[t]he caption in this matter names Allstate Indemnity Company, rather than Allstate Insurance Company, who is the proper party" and noting the district court docket "was never amended to reflect the correct Allstate entity." Brief for Defendant-Appellant at 2 n.1, *Mallek v. Allstate Insurance Company*, 2023 WL 3513783 (May 2, 2022) (No. 22-0086). Accordingly, the Clerk of Court is respectfully requested to modify the caption to reflect "Allstate Insurance Company" as the correct defendant.

Plaintiff further requests a modification to the caption to include "Kevin Schaeffer." (ECF No. 178 at 1.) The request is denied. Defendant Kevin Schaefer, an Allstate Agent, was terminated from this action on November 23, 2020. (*See* ECF No. 104 at 17-18 (granting summary judgment "in favor of Defendants on all of Plaintiff's claims against Mr. Schaefer").)

## CONCLUSION

For the reasons above, the Clerk of Court is respectfully directed to enter judgment in favor of Plaintiff in the amount of the policy limit of $358,000 for the loss of Plaintiff's insured property. Further, the Clerk of Court is respectfully requested to modify the caption to reflect "Allstate Insurance Company" as the correct defendant, instead of Allstate Indemnity Company. Post-judgment interest is mandatory and shall accrue from the date of

entry of judgment as provided in 28 U.S.C. § 1961. Defendant is respectfully requested to serve Plaintiff a copy of this Memorandum and Order and note service on the docket by April 10, 2025.

**So ordered.**

Dated:      April 8, 2025
            Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York